[Civ. No. 15664.   First Dist., Div. Two.   Feb. 17, 1954.]

PAUL KRUGER, Appellant, v. CITY OF OAKLAND et al., Respondents.

Paul Kruger in pro. per. for Appellant.

John W. Collier, City Attorney, and George M. Cahalan, Deputy City Attorney, for Respondents.

KAUFMAN, J.—This is an appeal by plaintiff Paul Kruger from a judgment in favor of defendants, the city of Oakland, and Charles A. Reed, Arthur Davis, Joseph J. Ward and James J. Sweeney, Jr., in an action for wrongful conversion of plaintiff's personal property by the aforementioned officers and employees of said city.  The judgment was also in favor of the city on its cross-complaint, against Paul Kruger and Helma Kruger, his wife, in the sum of $855.74, the cost of the city's services in the abatement of a dangerous and unsanitary condition on plaintiff's premises.

The complaint alleged that plaintiff had stored on his premises scrap metal of the fair market value of $5,169; plumbing fixtures, supplies and tools, $1,000; antiques and

certain metallic objects, $1,000; certain tools and miscellaneous metallic items, $334, making a total sum of $7,503; that defendants' agents acting under color of a resolution of the City Council of Oakland ordered the abatement of an alleged dangerous and unsanitary condition on plaintiff's premises; that said acts were done with malice toward plaintiff, for which exemplary and punitive damages were demanded in the sum of $15,000. It was further alleged that a verified claim had been filed for the fair market value of said property with the exception of item four (miscellaneous articles) but that no action had been taken by the city.

Appellant herein, an elderly crusader against political subversion nationally and locally, has filed a unique document of two pages which presents no issues on this appeal. This document sets forth a somewhat incoherent account of plaintiff's efforts to establish a publicity bureau which was thwarted by the raid on his premises, of Oakland's invisible government, of the seizing by the city employees of the contents of plaintiff's writing desk and other prized possessions by the crew who were told to "Take everything! It's all junk!" What is designated as the attestative sections of the brief contains a magazine article on communist infiltration, letters to a state public official, attacks on Oakland public officials, and poems.

Respondent has set forth the issues as they were presented to the trial court by the complaint, answer, cross-complaint and answer to cross-complaint as follows:

1. Did defendant city of Oakland wrongfully convert certain scrap metal stored in and about the plaintiff's premises?

2. What is the reasonable value of the services of the city in abating the dangerous and unsanitary condition?

Respondent sets forth the Oakland ordinance with respect to abatement of dangerous or unsanitary conditions as Exhibit A to its answer and incorporated it by reference. This ordinance, No. 966 C. M. S., provides that every dangerous or unsanitary condition upon any premises in Oakland may be abated by the health officer in the manner provided therein. The procedure is then outlined for complaint and hearing. The health officer files a written complaint with the city manager setting forth facts showing the alleged condition; the city manager presents the same to the city council which fixes a time and place for public hearing on the complaint. A copy of the resolution and complaint must be served on the owner of the premises not less than five days

prior to the time fixed for hearing. When the hearing before the city council is completed the council must either dismiss the complaint or direct that the condition be abated. If abatement is ordered, the health officer must give written notice to the owner or occupant of the premises to abate, and if abatement is not commenced within five days thereafter and diligently prosecuted to completion, the health officer shall cause the condition to be abated. The health officer may call upon the street department or other city department to abate such condition in lieu of employing a contractor. The expense incurred by the city may be assessed against the real property on which the dangerous or unsanitary condition was located.

The evidence presented at the trial establishes that the city acted pursuant to the above ordinance and that all the procedural steps outlined therein were properly taken. A reading of the trial transcript shows that plaintiff made no attack upon the ordinance. There is nothing in the pleadings or at the trial attacking the constitutionality of the ordinance. Plaintiff's evidence was directed toward proving that the fair market value of the scrap metal seized was $7,503 and not $1,005.26, the amount which the buyer, Associated Iron and Metal Company, was ready to pay plaintiff for it, and which tender he had refused. The greater part of plaintiff's evidence, if his conclusions and accusations may be so characterized—he was the only witness at the trial—was offered to show malice toward plaintiff by city officials because of his attempts to expose the corruption allegedly existing in the municipal government.

It is unnecsssary to review the abundant evidence that the condition of plaintiff's property prior to the abatement constituted a dangerous and unsanitary condition as well as a fire hazard. The home, occupied by Paul Kruger and his wife, was located at 2642 Chestnut Street, Oakland. From 1939 to October 23, 1950, there had been numerous complaints, inspections, citations, and letters based upon the fact that Kruger was maintaining on his residential premises, a condition similar to a junk yard. The rooms of the house were filled with old newspapers, magazines, rags, stored furniture, packing boxes, etc., piled to heights of from 6 to 8 feet. In the yard, both front and back, there was a collection of scrap metal, lumber, glass, rubber, used brick, cans, etc., filling the property from the gutter in front to the rear boundary line and from one side fence to the other. The lot is approxi-

mately 26 feet by 132 feet. There are neat bungalows to either side of the Kruger property and across the street. The house to the south of plaintiff's is about 3 feet from the Kruger premises, and on the north, a wooden garage is near the Kruger's boundary line, toward the back of the lot. Only a single car driveway separates this neighbor's home from the Krugers.

The fire marshal's office recorded its first complaint against the premises on February 6, 1939, and at the time of the council hearing thereon had made 25 inspections, issued six notices, written four letters, obtained two citations and had appeared in police court several times seeking abatement of these conditions as dangerous, unsanitary, a public nuisance, and an unlawful collection of combustible rubbish and waste. On December 26, 1949, plaintiff pleaded guilty in police court of the misdemeanor of violating section 2-1.72 of the Oakland Municipal Code in that he unlawfully permitted an accumulation of paper, lumber and other combustible and inflammable waste material in and about his house and on his property.

The notice to abate the condition following the resolution by the city council was served upon Mr. and Mrs. Kruger on August 7, 1950. Nothing was done by the Krugers so when two and one-half months had elapsed, the street department at the request of the health officer began the abatement on October 30, 1950, removing 59 truck loads of lumber, metal, papers, rags, cans, bottles, tires, sacks, etc. Fourteen of the truck loads were scrap metal. The photographic exhibits, some of which are included in respondent's brief, show to what fantastic lengths plaintiff's collecting instinct had led him, and are convincing evidence that a fire hazard was created. The witness for the health department also testified that the condition of the premises constituted a potential rodent hazard, that there was an excessive rodent population in the neighborhood, and the foreman of the street department crew testified to evidence of rats in the back yard and in the attic.

There is no evidence in the record that the city acted with malice. Mr. Kruger's conclusions and suspicions are not evidence of facts.

The reasonable value of the city's services in abating the dangerous and unsanitary condition is adequately supported by the testimony of the witness Davis of the Maintenance Division of the Oakland Street Department who kept the

time sheets, testified to cost of labor and the charge for equipment.

We conclude that the judgment of the trial court is amply supported by the law and the evidence and that no prejudical error appears in the record before us.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1954.